SAVOY, Judge.
This is a suit in tort arising out of an accident involving two trucks which occurred on April 20, 1965, at the intersection of Louisiana Highways 14 and 27 at Holmwood, Calcasieu Parish. Plaintiff sues for damages for personal injuries, medical expenses, loss of earnings and property damages resulting from the accident. He alleged he was driving his 1961 Chevrolet truck in a southerly direction *584 toward the intersection, when a 1963 Dodge dump truck owned by the Louisiana Department of Highways, and being driven by an employee, Cloie Crochet, made a left turn onto the highway from a private parking lot and/or the intersecting highway, immediately in front of his vehicle. Named as defendant in the suit is the liability insurer of. the 1963 dump truck driven by Cloie Crochet. Plaintiff alleges he had no opportunity to avoid the accident or his injuries, and that the collision and resulting damages were caused solely and proximately by the negligence of Cloie Crochet in failing to keep the vehicle he was driving under proper control, in failing to keep a proper lookout, in failing to see what he should have seen, in failing to stop and/or yield the right-of-way, in cutting immediately in front of the path of an oncoming vehicle, and in pulling out of a private parking lot onto a public highway in the face of oncoming traffic.
The defendant filed responsive pleadings, admitting insurance coverage on the 1963 Dodge truck, but denying that Cloie Crochet was at fault in the accident. The defendant alleges that the sole and proximate cause of the accident was the negligence of plaintiff in failing to keep a proper lookout, in driving his truck into the rear of the truck driven by Cloie Crochet, in failing to take the necessary actions to avoid the accident, and in traveling at an excessive speed under the existing conditions. Further, defendant alleged that plaintiff was negligent in driving his truck with a load that was excessive under existing conditions, and particularly excessive for the defective brakes on plaintiff’s truck, causing plaintiff to be unable to bring his truck to a stop in order to avoid the accident.
The case was tried before a jury, and a verdict was entered in favor of plaintiff in the amount of $10,000.00 with interest. The defendant’s motion for a new trial was denied, and defendant filed an appeal to this Court. Plaintiff did not file an answer to the appeal.
The issues before us are those of negligence, contributory negligence, and quantum.
Defendant maintains the jury erred in finding Cloie Crochet negligent and in failing to find that plaintiff was guilty of contributory negligence. Defendant also maintains that the evidence overwhelmingly reflects that plaintiff drove his truck into the rear of the Highway Department truck at a point several hundred feet south of the intersection. In the alternative, defendant maintains that the award of $10,000.00 to plaintiff was grossly excessive and disproportionate to awards made for similar injuries.
Plaintiff maintains that the findings of fact and the award made by the jury were proper and fully supported by the record, and that the judgment of the district court should be affirmed.
The record shows the accident occurred at or near the intersection of Louisiana Highways 14 and 27, in Calcasieu Parish, at Holmwood. For some distance north of the intersection, the two State highways run together, and then divide at the intersection, with Highway 14 turning eastward, and Highway 27 continuing directly south. For convenience in this opinion, we will refer to the north-south stretch of.road as Highway 27, and the eastward extension of the intersection at Highway 14. Because of a triangular island at the junction, the intersection could be described as a “Y” intersection rather than a “T” intersection. There is a railroad track crossing the intersection in a northwesterly-southeasterly direction. At the northeast corner of the intersection is located a business establishment known as “Natali’s Grocery Store”. There is a large shelled parking area to the west and south of this establishment.
Shortly before the accident, Cloie Crochet had parked the Highway Department truck in the parking area to the west of the grocery store, and had entered the store to-purchase cigarettes. This truck was loaded *585 with approximately five yards of clam shell. Crochet then proceeded to drive westward from the grocery store onto Highway 27, making a left turn to the south. In entering the highway, he did not proceed on Highway 14 to take the south leg of the “Y” portion of the intersection, but rather, he entered Highway 27 directly, at the north edge of the “Y”. Plaintiff’s truck pulled a tandem trailer which disengaged from the tractor, and was loaded with approximately 20 tons of asphalt blacktopping. At the time of the accident, the weather was clear and the road was dry. There was no other traffic in the vicinity on Highway 27, although there were other vehicles parked at the. grocery store and possibly on Highway 14.
The evidence is conflicting as to where the accident occurred. The plaintiff’s version is that Cloie Crochet drove the Highway Department truck into the highway at the intersection immediately in his path, and that the collision occurred at approximately the center of the intersection, measuring from north to south. Plaintiff testified that the Highway Department truck had not completed its turn to the left, nor had this truck entered completely the southbound lane of Highway 27. The defendant’s version is that its truck was not struck until it had proceeded a distance of several hundred feet south of the intersection, at which time the defendant’s truck was located completely within the southbound lane of traffic on Highway 27.
Plaintiff testified he was driving approximately SO miles per hour before he reached the intersection, and that he slowed his speed to approximately 30 to 35 miles per hour as he neared the intersection because of a dip where the railroad crossed the highway. He testified he first noticed the Highway Department truck as it came out in front of him on the highway, that he sounded the horn of his truck, but that the Highway Department’s truck came on out into the highway. He testified he hit his brakes, but continued forward, striking the Highway Department’s truck at a time when that truck was still in a turning position. He stated the right portion of his truck hood struck the right rear corner of the bed on the Highway Department’s dump truck. There was no rear bumper on the dump truck. In connection with his testimony, the hood damaged on plaintiff’s truck was introduced into evidence. He testified the impact caused him to lose control of his truck by breaking the steering apparatus and an axle of his truck and knocking out his braking system. He testified his truck continued some SO to 100 feet, more or less, beyond the point of impact, and that both trucks stopped some distance south of the intersection, partly off the road, with his vehicle approximately 15 feet behind that of the Highway Department’s truck. He admitted that neither of the trucks were moved after they had stopped immediately following the accident, until after the state trooper arrived and investigated the accident. He placed the point of impact north of the railroad crossing at the intersection.
Cloie Crochet testified he proceeded from a parked position to the west of the grocery store directly westward onto Highway 27 and then proceeded southerly. He entered Highway 27 north of the “Y” intersection. As he entered the highway, he noticed plaintiff’s truck coming from the north at a distance of approximately 14 of a mile. He stated his truck was loaded with approximately five yards of shell, that it did not have a bumper on the back of it, and the truck bed was square. There were five forward gears on the truck, and he thought the truck was in either third or fourth gear at the time it was struck, and was picking up speed. He estimated the speed of his truck at 10 to 18 miies per hour at the moment of impact. He testified that he applied his brakes after he was hit, and. pulled to the right side of the road and stopped as soon as he could. The two trucks were not moved following the collision until after the state trooper arrived. Although he did not measure the distance, *586 he estimated plaintiff’s truck stopped approximately S00 feet south of the grocery store at the northeast corner of the intersection. Both trucks were stopped mainly on the paved portion of the highway, with their right wheels off the paved portion. His truck was knocked a short distance down the road by the impact. The only damage to his truck was a broken pull hook on its frame at the right rear corner.
The investigating state trooper, James E. LeBoeuf, testified that when he arrived at the scene of the accident, he found both trucks were located approximately 200 feet south of the railroad tracks at the intersection. He testified he paced off this distance. At another point in his testimony, he said he found skid marks of approximately 90 feet in length which began just north of the railroad tracks and ended at the rear of plaintiff’s trailer. He also testified that plaintiff told him he was watching another vehicle and failed to notice the Highway Department’s truck. He testified plaintiff also stated he was traveling approximately 35 miles per hour. Trooper Lt. Roy Tatum testified he was the lieutenant in charge of the shift on duty at the time of the accident. He overheard the call from headquarters to Trooper LeBoeuf, and since he was not far from the area, he decided to go to Holmwood to check out the accident and to see whether anyone was injured. He arrived at the scene after Trooper LeBoeuf. He testified plaintiff’s truck was stopped on Highway 27 facing in a southerly direction at a distance of at least 300 to 400 feet south of the railroad at the intersection. He noticed skid marks of at least 60 to 70 feet in length which stopped immediately behind the plaintiff’s trailer. He questioned the parties to determine whether anyone was injured, and both parties said they were not hurt. Since no one was hurt, he did not stay at the scene for more, than about 20 minutes.
Fred Schlessinger, the District Safety Inspector for the Department of Highways, was called to testify on defendant’s behalf. It was his duty to investigate and report all accidents involving highway equipment within his area. He was contacted at the district office in Lake Charles, where he asked the Parish Superintendent, Joseph Higginbotham, to ride with him to investigate the accident. They arrived at the scene of the accident about 3:30 p. m. He testified plaintiff’s truck was located approximately 500 to 600 feet south of the intersection, facing in a southerly direction. The Highway Department’s truck had already left the area by permission of Trooper LeBoeuf. As customary, he made photographs of the area with a Polaroid Camera, including a photograph of plaintiff’s truck. The photograph of plaintiff’s truck was introduced into evidence as Exhibit “D-2”. He also testified that he asked plaintiff what happened, and plaintiff stated that when he got to the intersection he looked at a car that had stopped at the intersection with a woman in the car, and that when he looked back to the road he was traveling on, he noticed the Highway Department’s truck ahead of him, and he hit it. Joseph Higginbotham stated that plaintiff’s truck was located approximately 500 to 1000 feet south of the intersection. He also testified that he was present and heard the statement of plaintiff that he had looked at a car with a woman in it at the intersection, and when he looked back to the road ahead, he was getting close to the Highway Department’s truck.
After having carefully considered the evidence in this case, we find that the jury was manifestly erroneous in accepting the plaintiff’s version of the accident. A reasonable evaluation of the evidence in the record shows that the accident did not occur at the intersection as contended by plaintiff, but rather, that it occurred at a distance of several hundred feet south of the center of the intersection.
The defendant offered in evidence as Exhibit “D-2” a photograph which was taken of plaintiff’s truck following the accident. All parties who testified on this *587 point stated that the photograph reflected the position of plaintiff’s truck following the accident, and plaintiff testified he did not move the truck after the accident or before the state trooper arrived. Trooper LeBoeuf arrived at the scene first and stayed until a wrecker hooked onto plaintiff’s truck to tow it away. By a comparison of this photograph with other photographs taken of the area, and by judging from the number of fence posts and other markings, it is seen that plaintiff’s truck came to rest following the accident at a point at least 400 feet south of the center of the intersection.
Plaintiff estimated that his truck moved a distance of 50 to 100 feet, more or less, after the impact. Cloie Crochet testified that his truck moved 10 to 15 feet after the impact, and that he applied his brakes and stopped as soon as he could. The record shows that the trucks stopped about 15 feet apart following the accident.
Trooper LeBoeuf testified that he paced off the skid marks from plaintiff’s truck and estimated them to extend approximately 90 feet. He also testified these skid marks ended at the rear of plaintiff’s trailer, and there was debris in the area showing the location of the point of impact near where the trucks had stopped. Lt. Tatum testified the skid marks were at least 60 to 70 feet in length, and they stopped immediately behind plaintiff’s trailer.
Although Trooper LeBoeuf testified the skid marks began north of the railroad at the intersection, this does not conform with his remaining testimony that Exhibit “D-2” showed the position of plaintiff’s truck following the accident, and that plaintiff’s truck was located some 200 feet south of the intersection, since he also testified that the skid marks were only 90 feet in length and stopped at the rear of plaintiff’s truck. The record also shows there is a dispute as to whether or not Trooper LeBoeuf made a contradictory statement previously that the skid marks had started south of the railroad tracks, rather than north of the railroad tracks at the intersection. Also, Lt. Tatum testified the skid marks began south of the railroad tracks, and that he did not see any skid marks at the intersection, as the trucks were located too far south for any skid marks to be up that far north.
Considering the above evidence, it is obvious that the accident could not have occurred at the middle of the intersection in accordance with plaintiff’s version. This version is supported only by plaintiff’s testimony and that of Trooper LeBoeuf, and their testimony is conflicting and does not conform to the physical evidence at the scene. Accordingly, we find that the accident occurred some distance to the south of the intersection, in accordance with defendant’s version of the accident.
Considering the position where the trucks stopped following the accident, the location of the debris on the highway, the speeds involved, and the various other factors, Cloie Crochet had proceeded for a distance of at least 300 to 350 feet south of the center of the intersection before his truck was struck from the rear by plaintiff’s truck. He had entered the highway just north of the “Y” intersection, adjacent to the grocery store, at a time when plaintiff’s truck was in sight some distance to the north. He did this while pulling a heavy load at a slow speed, knowing that he would be unable to quickly increase the speed of his truck. As a truckdriver, Crochet should have been aware that the oncoming truck may have been loaded with a heavy load. Under the circumstances, it is possible that the jury could consider this action as negligence, and we would not be prone to reverse such a finding.
However, this Court finds that plaintiff was obviously guilty of contributory negligence. He indicts himself of negligence in his testimony when questioned *588 as to when he first observed the Highway-Department truck:
“Q. Will you tell us when you first noticed the truck driven by Mr. Crochet, if you ever noticed it before you hit it.
“A. I didn’t notice him at all until he come right in front of me in the highway.
* * * * * *
“Q. Tell the jury where you were when you first saw the Highway Department truck.
“A. When I saw him, he was coming right in front of the highway, in front of my truck. That’s as soon as I seen him. That was the only time I seen him, which I didn’t have time to do any more but to apply my brakes, and which I was too close and I couldn’t do no other way but to hit him.
“Q. My question is this. Exactly where were you when you first saw the Highway Department truck?
“A. I was right at the intersection.”
The fact that he did not notice the Highway Department truck until he was at or past the intersection is supported by his statements made at the scene of the accident. He told Trooper LeBoeuf that he was watching another vehicle and failed to notice the Highway Department truck traveling slowly ahead in the roadway, that when he saw the truck ahead, he applied his brakes and was unable to stop in time. Additionally, he made the statement in the presence of Fred Schlessinger and Joseph Higginbotham that he was looking at a car stopped at the intersection with a lady in it, and when he looked back to the road he was traveling on, he noticed the Highway Department’s truck ahead of him, at a point when it was too late to stop. Plaintiff did not take the stand following this testimony to deny making these admissions.
It is obvious from the facts in this case that plaintiff did not really see the Highway Department’s truck ahead in the highway until he was some distance past the intersection. Considering the reaction time necessary to apply brakes, and the skid marks before the impact, it appears to this Court that plaintiff did not notice the forward vehicle until he was some 200 feet more or less past the center of the intersection. In view of the load he was carrying in the truck, he was charged with a high degree of duty to maintain a careful lookout for traffic in the road ahead. His failure to observe the forward vehicle in time to stop or take other preventive measures was negligence, which was a proximate cause of the accident.
In view of our holding, it will not be necessary to discuss the issue of quantum.
For the written reasons assigned, the verdict of the jury and the judgment of the district court are reversed and set aside, and judgment is hereby rendered in favor of the defendant, The Employers Liability Assurance Corporation, Ltd., and against plaintiff, Elza Guidry, rejecting plaintiff's demands and dismissing his suit. Plaintiff is cast for all costs of court.
Reversed and rendered.